1  **PROSKAUER ROSE LLP**
   ANTHONY J. ONCIDI (SBN 118135)
2  GREGORY W. KNOPP (SBN 237615)
   PHILIPPE A. LEBEL (SBN 274032)
3  aoncidi@proskauer.com
   gknopp@proskauer.com
4  plebel@proskauer.com
   2029 Century Park East, Suite 2400
5  Los Angeles, CA 90067
   Telephone: 310-557-2900
6  Facsimile:  310-557-2193

7  ELISE M. BLOOM (*pro hac vice* application pending)
   ebloom@proskauer.com
8  Eleven Times Square
   New York, NY 10036
9  Telephone: 212-969-3000
   Facsimile: 212-969-2900

10

11 Attorneys for Defendant
   Duane Morris LLP

12

13              **UNITED STATES DISTRICT COURT**

   **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**
14

15 MEAGAN GARLAND, on behalf of herself and       Case No. 4:24-cv-04639-HSG
   all others similarly situated.
                                                  Judge Haywood S. Gilliam, Jr.
16                          Plaintiff,
                                                  **DEFENDANT DUANE MORRIS LLP'S**
17        vs.                                     **NOTICE OF MOTION AND MOTION TO**
                                                  **TRANSFER VENUE; MEMORANDUM**
18 DUANE MORRIS LLP, a business entity; TAX       **OF POINTS AND AUTHORITIES**
   ACCOUNTING GROUP, a business entity, and
19 DOES 1 through 200, inclusive,                 [Declaration of Edward Cramp and [Proposed]
                                                  Order filed concurrently herewith]
20                          Defendants.
                                                  Date:        October 3, 2024
21                                                Time:        2:00 p.m.
                                                  Ctrm:        2, 4th Floor
22
                                                  Date Action Filed: July 31, 2024
23

24

25

26

27

28

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 3, 2024, at 2:00 p.m., in Courtroom 2 on the 4th Floor of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, defendant Duane Morris LLP will and does hereby move for an order granting its Motion to Transfer Venue.

This Motion is and will be based on the grounds that venue is more appropriate in the United States District Court for the Southern District of California for the interests of justice, including convenience of the parties, convenience of the witnesses, local interest in the controversy, and relative court congestion.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Edward Cramp filed concurrently herewith, and any matter upon which the Court may take judicial notice, all pleadings and papers in the Court's file, and upon such argument as may be made at the hearing on this Motion.

Dated: August 29, 2024                PROSKAUER ROSE LLP


By:     /s/ Gregory W. Knopp
        Gregory W. Knopp
        Elise M. Bloom
            (pro hac vice application pending)
        Anthony J. Oncidi
        Philippe A. Lebel
        Attorneys for Defendant
        Duane Morris LLP

Defendant Duane Morris LLP's Motion to Transfer Venue

## <u>**TABLE OF CONTENTS**</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

III.    ARGUMENT ........................................................................................................... 5

     A.     Garland Could Have Filed This Action In the Southern District ................. 6

     B.     The Interests Of Justice And Convenience Favor Transfer. ........................ 7

         1.     Garland's Choice Of Forum Deserves Little Weight. ...................... 8

         2.     The Convenience Of The Parties Favors Transfer ........................... 9

         3.     The Convenience Of The Witnesses Favors Transfer. ................... 10

         4.     The Local Interest In The Controversy Favors Transfer. .............. 12

         5.     The Relative Court Congestion Favors Transfer. ........................... 12

         6.     No Factors Weigh Against Transfer. .............................................. 13

         7.     On Balance, The Factors Clearly Favor Transfer. ......................... 13

IV.     CONCLUSION ...................................................................................................... 14

Defendant Duane Morris LLP's Motion to Transfer Venue

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agasino v. Am. Airlines Inc.*,
2019 WL 3387803 (N.D. Cal. July 26, 2019)...........................................................................6

*Allchin v. Volume Servs., Inc.*,
2016 WL 704616 (E.D. Cal. Feb. 23, 2016).............................................................................11

*Arreola v. Finish Line*,
2014 WL 6982571 (N.D. Cal. Dec. 9, 2014)...........................................................................11

*Bennett v. Bed Bath & Beyond, Inc.*,
2011 WL 3022126 (N.D. Cal. July 22, 2011)............................................................................8

*Bhatia v. Silvergate Bank*,
2023 WL 4937325 (N.D. Cal. Aug. 1, 2023)..........................................................................13

*BioSpyder Techs., Inc. v. HTG Molecular Diagnostics, Inc.*,
2021 WL 242866 (N.D. Cal. Jan. 25, 2021)..............................................................................8

*Brainerd v. Governors of the Univ. of Alberta*,
873 F.2d 1257 (9th Cir. 1989) ..................................................................................................6

*Brown v. Abercrombie & Fitch Co.*,
2014 WL 715082 (N.D. Cal. Feb. 14, 2014) ..........................................................................11

*Burrus v. Elevance Health, Inc.*,
2022 WL 17722396 (N.D. Cal. Dec. 15, 2022)......................................................................11

*Clark v. Spring Spectrum L.P.*,
2010 WL 5173872 (N.D. Cal. Dec. 15, 2010).................................................................10, 12

*Coremetrics, Inc. v. Atomic Park.com, LLC*,
370 F. Supp. 2d 1013 (N.D. Cal. 2005) ....................................................................................6

*Davis v. N. Y. Life Ins. Co.*,
2024 WL 100277 (N.D. Cal. Jan. 9, 2024) ............................................................................13

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) ..................................................................................13

*FieldTurf USA, Inc. v. Blue Sky Int'l, Inc.*,
2012 WL 4510671 (E.D. Cal. Sept. 30, 2012)..........................................................................8

*Forrand v. Fed. Express Corp.*,
2008 WL 276389 (N.D. Cal. Jan. 31, 2008) .............................................................................9

*Foster v. Nationwide Mut. Ins. Co.*,
   2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ...................................................................9, 11

*Garlough v. Trader Joe's Co.*,
   2015 WL 4638340 (N.D. Cal. Aug. 4, 2015) ...........................................................................10

*Gemini Cap. Grp. v. Yap Fishing Corp.*,
   150 F.3d 1088 (9th Cir. 1998) ..................................................................................................8

*Google LLC v. Van Duc*,
   2024 WL 3740145 (N.D. Cal. July 23, 2024) ...........................................................................6

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ...................................................................................................................6

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...................................................................................................................6

*King v. Sam Holdings, LLC*,
   2011 WL 4948603 (N.D. Cal. Oct. 18, 2011) ...........................................................................8

*Levine v. Entrust Grp., Inc.*,
   2012 WL 6087399 (N.D. Cal. Dec. 6, 2012) ..........................................................................12

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
   89 F.R.D. 497 (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381 (9th Cir. 1984) ....................................7

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) .....................................................................................................8

*Mays v. Wal-Mart Stores, Inc.*,
   2018 WL 1400468 (N.D. Cal. Mar. 19, 2018) .....................................................................9, 10

*McCormack v. Safeway Stores, Inc.*,
   2012 WL 5948965 (N.D. Cal. Nov. 28, 2010) ..........................................................................8

*Multimedia Patent Trust v. Tandberg, Inc.*,
   2009 WL 3805302 (S.D. Cal. Nov. 12, 2009) ........................................................................13

*Paaluhi v. U.S.*,
   2006 WL 5671235 (C.D. Cal. Feb. 1, 2006) .......................................................................9, 14

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ...................................................................................................6

*Park v. Dole Fresh Vegetables, Inc.*,
   964 F. Supp. 2d 1088 (N.D. Cal. 2013) ..................................................................................10

*Perez v. Performance Food Grp., Inc.*,
   2017 WL 66874 (N.D. Cal. Jan. 6, 2017) ...............................................................................11

*Perez v. Wells Fargo Bank, N.A.*,
   2024 WL 2191940 (N.D. Cal. May 15, 2024) ..............................................................8, 13

*Romoff v. Johnson & Johnson Consumer Inc.*,
   2022 WL 3905301 (S.D. Cal. Aug. 26, 2022) ......................................................................12

*Ruiz v. Affinity Logistics Corp.*,
   2005 WL 5490240 (N.D. Cal. Nov. 7, 2005) .....................................................................9, 10

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ..................................................................................................................7

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ................................................................................................................7

*Vasquez v. Draper and Kramer Mortg. Corp.*,
   2021 WL 229313 (N.D. Cal. Jan. 22, 2021) ..........................................................................8

*Ventress v. Japan Airlines*,
   486 F.3d 1111 (9th Cir. 2007) ...............................................................................................5

*Vu v. Ortho-McNeil Pharm., Inc.*,
   602 F. Supp. 2d 1151 (N.D. Cal. 2009) .................................................................................8

*Williams v. Bowman*,
   157 F. Supp. 2d 1103 (N.D. Cal. 2001) .................................................................................9

*Williams v. Granite Constr. Co.*,
   2009 WL 250104 (N.D. Cal. Feb. 3, 2009) ..........................................................................13

*Wilson v. Walgreen Co.*,
   2011 WL 4345079 (N.D. Cal. Sept. 14, 2011) ...............................................................10, 12

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
   2003 WL 22387598 (N.D. Cal. Oct. 14, 2003).....................................................................7

**FEDERAL STATUTES**

28 U.S.C. § 1332(a) ......................................................................................................................6

28 U.S.C. § 1332(b) ......................................................................................................................6

28 U.S.C. § 1391(b)(1) .................................................................................................................7

28 U.S.C. § 1391(b)(2) .................................................................................................................7

28 U.S.C. § 1391(c)(2) .................................................................................................................7

28 U.S.C. § 1404(a) .............................................................................................................. passim

**State Statutes**

Cal. Civ. Code § 410.10.................................................................................................................6

Defendant Duane Morris LLP's Motion to Transfer Venue

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Meagan Garland, a partner of the law firm Duane Morris LLP ("Duane Morris" or the "Firm"), claims she is not really a partner at all.  She contends Duane Morris misclassified her as a partner instead of an *employee* and discriminated against her by paying her less than other partners. Garland's claims are baseless.  Duane Morris has treated her fairly at every step, first granting her the promotion to partner she actively sought, while compensating her generously, and then accommodating her requests for extended leaves of absence, the most recent of which is ongoing, has continued for more than one year, and was fully compensated for much of the time.  Moreover, Garland's own indisputable performance struggles as an employment lawyer in the Firm have persisted, despite the Firm's unfailing support to help her succeed.  The Firm has always treated Garland fairly and well within the bounds of the law.

Regardless of its dubious merits, this lawsuit belongs in San Diego.  Garland lives there, her lawsuit centers on her status as a partner in Duane Morris's San Diego office, and she retained San Diego-based attorneys to represent her in this action.  Garland nevertheless chose to file her lawsuit in Northern California, which has no apparent connection to her alleged employment or this dispute. Therefore, Duane Morris hereby moves to transfer venue to the Southern District of California under 28 U.S.C. § 1404(a).[1]

Transfer is plainly warranted.  To begin, Garland clearly could have filed this action in the Southern District, where she lives and where Duane Morris maintains an office and thus is subject to that Court's jurisdiction.  The interests of justice and convenience unquestionably favor transfer as well.  Garland asserts claims based on her purported employment, which indisputably is based in San Diego.  Therefore, the Southern District clearly is a more convenient venue for Garland, as well as the likely witnesses, who largely will consist of the partners and employees of Duane Morris's San Diego office, who can attest to Garland's significant performance issues, which amply justify her comparative compensation, and illuminate Garland's relationship with the Firm—*i.e.*, a genuine

---

[1] The Complaint identifies a second defendant, "Tax Accounting Group," which is simply part of Duane Morris and not a distinct entity, as Garland acknowledges.  *See* Compl. ¶ 150.

partnership.  Moreover, Garland's choice of a venue lacking any connection to her claims is due no deference, especially in a putative class action, as the Ninth Circuit has consistently held.

Indeed, not a single factor relevant to the transfer analysis favors the Northern District, which is a virtual stranger to this dispute.  The Court therefore should transfer this action to the far more appropriate forum, rather than indulge what appears to be nothing more than naked forum-shopping.

## II.    BACKGROUND

"At all times relevant to this Complaint, Plaintiff Meagan Garland [was] a resident of the County of San Diego, California."  Compl. ¶ 8.  Further, since becoming a partner on January 1, 2021 until she began her current leave of absence in July 2023, Garland worked from Duane Morris's San Diego office.  Declaration of Edward Cramp ("Cramp Dec.") ¶ 4.

Garland claims Duane Morris misclassified her as a partner rather than an "employee." Compl. ¶ 1.  Based on this allegation, she asserts 13 common law causes of action on behalf of a putative class of U.S. partners compensated on a fixed compensation basis.  *Id.* ¶¶ 47, 61-64, 79-93, 101-105, 110-182.  She claims "[t]he acts and omissions upon which this action is based occurred nationwide at each of Duane Morris's twenty-nine (29) physical offices across the country."  *Id.* ¶ 6. Based on the alleged misclassification, Garland also asserts several statutory claims on behalf of these partners in California.  *Id.* ¶¶ 46, 65-70, 74-78, 94-100, 106-109.  Finally, she asserts a claim for pay discrimination on behalf of a subset of the California class.  *Id.* ¶¶ 48-49, 184.

Garland's misclassification theory rests on numerous allegations about the Firm that, in time, Duane Morris will prove are false.  For example, Garland falsely claims partners compensated on a fixed compensation basis do not participate in the leadership and management of the Firm.  In fact, as Garland knows, numerous such partners serve in various Firm management roles, including as members of the Partners Board, Hiring Partner, Team Leads, Office Heads, Practice Group Division Heads, and as members of influential Firm Committees, such as Loss Prevention, the WINS Steering Committee, the Diversity, Equity and Inclusion Committee, the Contingent Fee/Alternate Fee Committee, and the Professional Standards Committee.

Garland's theory rests on myriad other misrepresentations as well.  Garland claims fixed compensation partners do not participate in selecting new partners when, in fact, the Firm approves

new partners at meetings attended by *all* partners.  She claims these partners are supervised by Office Heads and Practice Group Heads when, in fact, the supervision provided by these leaders applies to *all* partners.  Indeed, all partners exercise significant autonomy and have oversight and supervisory responsibility regarding associates, special counsel, and staff, as well as other partners working on their matters.  Garland also claims fixed compensation partners do not contribute capital to the Firm when, in fact, all partners contribute capital, maintain capital accounts, and receive interest on that capital.  Moreover, partners compensated on a fixed compensation basis attend all partners' meetings, receive all communications sent to partners, can issue and sign opinion letters, can open matters, and can and do bind the Firm.  Indeed, the only difference between the two groups of partners is the manner they receive compensation.

Garland's allegations about her compensation are similarly misguided.  The compensation process involves a highly individualized analysis of numerous facts reflecting the myriad contributions of a partner—both economic and otherwise—with input from other partners with whom they work, Practice Group Heads, and Office Heads.  The Firm's Executive Committee, which Garland falsely claims is dominated by men, carefully reviews all partners' financial metrics, their self-evaluation memos, and the evaluation memos prepared by Office Heads and Practice Group Heads and seeks feedback from other stakeholders.[2]

Garland's Complaint also ignores her own performance, which amply justified her compensation.  For example, Garland was the subject of approximately 20 discovery motions in which she allegedly was responsible for delays and taking frivolous positions, many of which motions sought sanctions against the client and the Firm.  In at least one case, the court did, in fact, award sanctions, and Garland failed to report the pending sanctions motions to the Firm as required. In addition, several clients complained about Garland's lack of responsiveness and work product and refused to continue to work with her, as did various Firm partners.

---

[2] Each year, the Executive Committee initially determines the compensation of each partner and then seeks input from the relevant Practice Group Heads and Office Heads.  The Executive Committee then may revise compensation based on the feedback from the Practice Group Heads and Office Heads.  The Executive Committee's determinations as to partner compensation are then reviewed and approved by the Partners Board.  The compensation amounts are then communicated to each partner, and every partner is entitled to an appeal of their compensation amount.

As a result of her performance issues, multiple partners had to step in to handle Garland's matters or assignments.  Moreover, fee write-offs relating to her work were significant.  Not surprisingly, these issues affected her compensation, consistent with how the Firm's compensation process works.  Although the Firm counseled Garland regarding these issues, she repeatedly refused to take ownership of the issues or improve her performance.

Significantly, many of Garland's Duane Morris colleagues who can attest to her partner status and the above performance issues justifying her compensation work in San Diego or elsewhere in Southern California.  These potential witnesses include:

- Partner A, the Managing Partner of the San Diego office, who has personal knowledge that a significant Firm client refused to continue to work with Garland due to her unresponsiveness and that, without providing any notice, Garland failed to show up for a presentation she was supposed to give to more than 200 registrants;

- Partner B, a partner in the San Diego office, who has personal knowledge of a case that Garland handled in which the adversary filed numerous discovery motions seeking sanctions against Duane Morris and the client based on Garland's improper discovery responses, that Firm clients refused to continue working with Garland because Garland was unresponsive and missed client and other deadlines, that other lawyers had to step in to take over work being handled by Garland, and that Garland had other performance issues;

- Partner C, a partner in the San Diego office, who has personal knowledge that a client refused to continue working with Garland because she repeatedly ignored client instructions by failing to limit her work to the client's specified parameters;

- Partner D, a partner in the Los Angeles office, who has personal knowledge that a client complained that Garland had spent far too long—and billed far too much time—completing a due diligence project in connection with a corporate transaction and that she did not meet deadlines;

Defendant Duane Morris LLP's Motion to Transfer Venue

- •    Partner E, a partner in the Los Angeles office, who has personal knowledge of numerous write-offs and write-downs on matters Garland handled;

- •    Partner F, a male partner in the San Diego office to whom Garland apparently compared herself in contending Duane Morris underpaid her, who has personal knowledge of his superior performance;

- •    Partner G, a partner in the San Diego office, who took over cases for Garland and has personal knowledge of Garland's performance issues; and

- •    Various partners, associates, legal assistants, and support staff from the San Diego office who observed Garland's performance, including missing litigation and other deadlines and otherwise neglecting her client obligations, and who stepped in to handle matters when Garland could not do so effectively, due to her leave or otherwise.[3]

Cramp Dec. ¶ 5.

Further, various non-party witnesses also reside in the San Diego area.  For example, Garland's doctor is in the San Diego area, and she will be a witness regarding Garland's alleged disabilities and Duane Morris's accommodation thereof by approving her extended leaves of absence.  Other lawyers and individuals who live and work in Southern California are also potential witnesses regarding Garland's performance.  Garland's tax accountants, who took over from Duane Morris's Tax Accounting Group, may also reside in the area, and they presumably will address Garland's claims that Duane Morris allegedly "unlawfully shift[ed]" its "tax obligations" to her.  Compl. ¶ 2.

## III.    ARGUMENT

Transfer is proper if the action "might have been brought" in the transferee district, and transfer would serve "the convenience of parties and witnesses" and "the interest of justice."  28 U.S.C. § 1404(a); *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).  These criteria clearly favor transfer here.

///

---

[3] Duane Morris will identify these witnesses in discovery at the appropriate time.

**A.    Garland Could Have Filed This Action In the Southern District.**

The threshold inquiry under Section 1404(a) is whether Garland could have filed this case in the Southern District of California.  *See* 28 U.S.C. § 1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Unquestionably, she could have done so.  An action "might have been brought" in any district that would have subject matter jurisdiction, can exercise personal jurisdiction over the defendant, and is a proper venue.  *Agasino v. Am. Airlines Inc.*, 2019 WL 3387803, at *4 (N.D. Cal. July 26, 2019) (citing *Hoffman*, 363 U.S. at 343-44).  Each of these requirements is satisfied here.

First, the Southern District, like this Court, can exercise subject matter jurisdiction over Garland's claims.  Garland specifically invokes diversity jurisdiction.  Compl. ¶¶ 5, 8; *see* Civil Cover Sheet § VI (citing "U.S. Code § 1332").  She also seeks more than $75,000 in recovery.  *See* Civil Cover Sheet § VII.  These allegations establish subject matter jurisdiction.  *See* 28 U.S.C. § 1332(a) (district courts have jurisdiction over a civil action "where the matter in controversy exceeds the sum or value of $75,000" and "is between citizens of different States").[4]

Second, the Southern District can exercise personal jurisdiction over Duane Morris.  When no federal statute governs personal jurisdiction over the claims, as here, the Court applies the law of the forum state.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  California "permits a court to exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution."  *Id.* (citing Cal. Civ. Code § 410.10).  Therefore, whether the Southern District may exercise personal jurisdiction depends on whether Duane Morris has minimum contacts with the district.  *See Google LLC v. Van Duc*, 2024 WL 3740145, at *2 (N.D. Cal. July 23, 2024) (citing *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1257 (9th Cir. 1989) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Duane Morris clearly has sufficient contacts with the Southern District, given that it maintains an office in San Diego in which more than 50 lawyers and administrative personnel work, and conducts substantial business in the region.  Cramp Dec. ¶ 2; *see Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1024 (N.D. Cal. 2005) (online retailer's contacts were

---

[4] The Court also has subject matter jurisdiction under the Class Action Fairness Act because Garland asserts class claims on behalf of partners across the country.  *See* 28 U.S.C. § 1332(b).

sufficiently substantial, continuous, and systematic where defendant provided services to California consumers through its virtual internet store, advertised these services over the internet, and made substantial and frequent sales to California consumers); *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598 at *2 (N.D. Cal. Oct. 14, 2003) (action could have been brought in Central District where defendant conducted business throughout California).

Third, venue is proper in the Southern District.  Venue is proper in any district in which "a substantial part of the events or omissions giving rise to the claim occurred[.]"  28 U.S.C. §§ 1391(b)(2).  Garland's claims arise from her alleged employment in the Southern District.  Venue also is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. §§ 1391(b)(1).  An entity like Duane Morris is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]"  28 U.S.C. § 1391(c)(2).  Because Duane Morris is subject to personal jurisdiction in the Southern District, as shown above, it is deemed to reside there.  For this reason, as well, the Southern District is a proper venue.

In short, the Southern District would have subject matter jurisdiction over Garland's claims, can exercise personal jurisdiction over Duane Morris, and is a proper venue.  Garland, therefore, could have (and should have) filed this lawsuit there.

### B.   The Interests Of Justice And Convenience Favor Transfer.

The purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations omitted).  Thus, the Court must determine whether "the convenience of the parties," "convenience of the witnesses," and "the interests of justice" warrant transfer.  28 U.S.C. § 1404(a); *Los Angeles Mem'l Coliseum Comm'n  v. Nat'l Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381 (9th Cir. 1984); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622) (if the action could have been brought in the target district, courts then undertake an "individualized, case-by-case consideration of convenience and fairness").  Other relevant factors include ease of access to the evidence, familiarity of each forum with the applicable law, feasibility

of consolidation with other claims, any local interest in the controversy, and the relative court congestion and time of trial in each forum. *See Perez v. Wells Fargo Bank, N.A.*, 2024 WL 2191940, at *1 (N.D. Cal. May 15, 2024) (citing *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009)).

Not all the factors carry the same weight. The touchstone of the analysis is the center of gravity of the litigation. *See BioSpyder Techs., Inc. v. HTG Molecular Diagnostics, Inc.*, 2021 WL 242866, at *2 (N.D. Cal. Jan. 25, 2021) (citing *McCormack v. Safeway Stores, Inc.*, 2012 WL 5948965, at *4 (N.D. Cal. Nov. 28, 2010) ("[A] fundamental principle underpinning the § 1404(a) analysis is that litigation should proceed in that place where the case finds its 'center of gravity.'")). Thus, the most important factors are the convenience of the parties and witnesses, which incorporate the location of operative facts and events. *See Vasquez v. Draper and Kramer Mortg. Corp.*, 2021 WL 229313, at *6 (N.D. Cal. Jan. 22, 2021) (ordering transfer where "the most important factors, namely, the convenience of the parties and witnesses and local interest, weigh[ed] heavily in favor of the Central District"). As shown below, these factors heavily favor transfer.

### 1.   Garland's Choice Of Forum Deserves Little Weight.

"[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see also Bennett v. Bed Bath & Beyond, Inc.*, 2011 WL 3022126 (N.D. Cal. July 22, 2011) (class action plaintiff's choice of forum "is not entitled to the same degree of deference as an individual plaintiff pursuing her own claim on her own behalf").

The plaintiff's choice also receives less deference when the plaintiff does not reside in the chosen venue and the events giving rise to the lawsuit did not occur there. *See Gemini Cap. Grp. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) ("the district court correctly acted on Ninth Circuit authority in granting Plaintiffs' choice of Hawaii as forum less deference" where plaintiffs were not Hawaii residents); *FieldTurf USA, Inc. v. Blue Sky Int'l, Inc.*, 2012 WL 4510671, at *3 (E.D. Cal. Sept. 30, 2012) ("Where, as here, plaintiffs are not residents of the forum, the assumption that their choice of forum is reasonable is significantly more attenuated."); *King v. Sam Holdings, LLC*, 2011 WL 4948603 at *2 (N.D. Cal. Oct. 18, 2011) (deference to plaintiff's choice of forum is

not "nearly as strong where the plaintiff does not reside in the venue or where the forum lacks

significant connection to the activities alleged in the complaint") (internal quotations omitted);

*Paaluhi v. U.S.*, 2006 WL 5671235, at *2 (C.D. Cal. Feb. 1, 2006) ("[T]he fact that most of the

operative facts in the case took place outside of this forum, lead the Court to attach minimal weight

to plaintiffs' choice of forum[.]"); *Forrand v. Fed. Express Corp.*, 2008 WL 276389, at *2 (N.D.

Cal. Jan. 31, 2008) ("none of the named plaintiffs resides in the Northern District of California, and

the deference owed to such nonresident plaintiffs' choice of forum is 'substantially reduced'").

Under these principles, Garland's choice of venue deserves no deference.  Garland is a San

Diego resident who works for Duane Morris in San Diego and asserts class claims arising from her

alleged employment relationship, which unquestionably is based in San Diego.  Garland thus

selected a forum in which she does not reside and that lacks any meaningful connection to her

claims.  Such forum-shopping is entitled to no deference.  *See Foster v. Nationwide Mut. Ins. Co.*,

2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007) ("Where forum-shopping is evident . . . courts

should disregard plaintiff's choice of forum."); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107

(N.D. Cal. 2001) ("The policy behind not deferring to a nonresident plaintiff's choice of venue

appears tied into the notion that plaintiffs should be discouraged from forum shopping.").

### 2. The Convenience Of The Parties Favors Transfer.

When considering the convenience of the parties, the starting point is the plaintiff's

residence.  *See Ruiz v. Affinity Logistics Corp.*, 2005 WL 5490240, at *2 (N.D. Cal. Nov. 7, 2005)

(noting that "the initial analysis of proper venue, even for a purported class action, is the location of

the residence, employment and evidence of the named plaintiff").  Again, Garland lives in San

Diego, works in Duane Morris's San Diego office, where her claims arose, and retained San Diego-

based attorneys to represent her in this action.  *See* Compl. ¶ 8.  Therefore, transfer to the Southern

District will make this litigation more convenient for Garland, as prosecuting the case will involve

less travel to attend hearings and trial.  The Southern District also is more convenient for Duane

Morris because, as detailed below (*see* Section III.B.3), many of the likely witnesses are current

partners and employees of Duane Morris's San Diego office.  Therefore, the convenience of the

parties clearly favors transfer.  *See Mays v. Wal-Mart Stores, Inc.*, 2018 WL 1400468, at *4 (N.D.

Cal. Mar. 19, 2018) (transferring case from Northern District of California to Central District of California where the plaintiff and both parties' attorneys lived and/or worked in the Central District: "[t]ravel costs would certainly be lower and scheduling court appearances would be easier if the case were litigated where Plaintiff and all counsel live"); *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (convenience of the parties favored transfer where the plaintiff and counsel lived in the transferee district).

       3.     The Convenience Of The Witnesses Favors Transfer.

      The convenience of witnesses is often "the most important factor" in deciding a motion to transfer venue under Section 1404(a).  *See Clark v. Spring Spectrum L.P.*, 2010 WL 5173872, at *3 (N.D. Cal. Dec. 15, 2010); *see also Garlough v. Trader Joe's Co.*, 2015 WL 4638340, at *4 (N.D. Cal. Aug. 4, 2015).  The Court "must consider not simply how many witnesses each side has and the location of each, but . . . the importance of the witnesses."  *Clark*, 2010 WL 5173872, at *3.

      The convenience of witnesses decidedly favors transfer here.  Garland's claims center on her alleged status as an employee in Duane Morris's San Diego office.  Therefore, the witnesses who will be of central importance are the partners and employees of that office.  As detailed above, these individuals are familiar with Garland's performance deficiencies, which directly bear on her compensation, as well as her relationship with the Firm.  Other San Diego-based witnesses can attest to the fair treatment the Firm provided Garland in accommodating her leave requests, taking over her work when necessary, and supporting her when she needed help.  Still other San Diego-area witnesses, such as Garland's doctors and (presumably) tax accountants, can shed light on other aspects of her claims.  Testifying in a trial in San Diego would be far more convenient for these witnesses, as well as those in Duane Morris's Los Angeles office.  *See Ruiz*, 2005 WL 5490240, at *3 ("Because Affinity Logistics has proffered evidence of specific witnesses who would be inconvenienced or unable to testify before this district, the Court finds the convenience of the witnesses and parties factor weighs in favor of transfer from the Northern District to the Southern District of California."); *Wilson v. Walgreen Co.*, 2011 WL 4345079, at *4 (N.D. Cal. Sept. 14, 2011) (granting motion to transfer from Northern District where the "principal witnesses" would be "Plaintiffs and their local managers and co-workers who mostly reside in the Central District").

Indeed, in cases alleging employment-related claims, courts routinely find that the District in which the plaintiff worked is more convenient for the likely witnesses. *E.g.*, *Perez v. Performance Food Grp., Inc.*, 2017 WL 66874, at *4 (N.D. Cal. Jan. 6, 2017) (transferring putative class action to Central District "because Plaintiff worked entirely in the Central District, any non-party witnesses— such as his former co-workers or managers—are most likely to reside in the Central District, and therefore, most likely would find it more convenient to testify there"); *Allchin v. Volume Servs., Inc.*, 2016 WL 704616, at *12 (E.D. Cal. Feb. 23, 2016) (transferring case to the Southern District of California in part because "during the entire time Plaintiffs worked for [defendant], they worked at [defendant's] locations in San Diego;" thus, "coworkers or supervisors would be located there"); *Arreola v. Finish Line*, 2014 WL 6982571, at *10 (N.D. Cal. Dec. 9, 2014) (transferring case to the Central District of California, where plaintiff exclusively worked for defendant, in part because "managers who could testify as to the policies, conditions, or practices at [plaintiff's] place of employment" most likely resided there).

The location of the putative class members does not affect the analysis. In fact, many courts decline to consider the putative class members' location at all. *See, e.g.*, *Burrus v. Elevance Health, Inc.*, 2022 WL 17722396, at *4 (N.D. Cal. Dec. 15, 2022) ("[I]t is well established that determination of proper venue is based on the named plaintiff, not unnamed or absent putative class members."). That is because "any projection at this point as to the nature and extent of any particular putative class member's participation in the case would be purely speculative." *Perez*, 2017 WL 66874, at *3 (citing *Brown v. Abercrombie & Fitch Co.*, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014)); *see also Burrus*, 2022 WL 17722396, at *4 (affording no weight to "the convenience of the putative class members or any alleged witnesses related to those class members who may or [may] not participate in this case").

In any event, the putative class members here are not concentrated in this District. Garland asserts most of her claims on behalf of a *nationwide* class and contends "[t]he acts and omissions upon which this action is based occurred nationwide at each of Duane Morris's twenty-nine (29) physical offices across the country."[5]  Compl. ¶ 6.  As a result, most of the putative class members

---

[5] Duane Morris has 23 physical offices in the U.S., not 29 as Garland alleges.

1   reside outside California, so this District is no more convenient for them than the Southern District.

2   *See* Cramp Dec. ¶ 3 (approximately 198 of the Firm's approximately 240 current U.S. partners

3   compensated on a fixed compensation basis are based in offices outside California).  Accordingly,

4   the location of the putative class members does not weigh against transfer.  *See Wilson*, 2011 WL

5   4345079, at *4 ("[f]or persons working in Illinois, there is essentially no difference between the

6   Northern District and the Central District"); *see also Levine v. Entrust Grp., Inc.*, 2012 WL

7   6087399, at *4 (N.D. Cal. Dec. 6, 2012) ("determining which potential venue is appropriate should

8   be based on the plaintiffs in the class action—not absent class members").

9   4.   <u>The Local Interest In The Controversy Favors Transfer.</u>

10          The Southern District has a stronger interest in adjudicating the controversy because the

11   events at issue took place there, the plaintiff lives and works there, and the crucial witnesses are

12   located there.  *See Clark*, 2010 WL 5173872, at *5 ("While the law applied is the same in either

13   district, the event giving rise to plaintiff's claims took place in the Central District.  Thus, [] the

14   Central District's local interest in the controversy . . . remains stronger because the events at issue

15   took place there.").

16   5.   <u>The Relative Court Congestion Favors Transfer.</u>

17          "Courts may also consider the docket congestion in evaluating transfer of venue under

18   § 1404(a)."  *Romoff v. Johnson & Johnson Consumer Inc.*, 2022 WL 3905301, at *6 (S.D. Cal. Aug.

19   26, 2022).  "The 'real issue is not whether a dismissal will reduce a court's congestion but whether a

20   trial may be speedier in another court because of its less crowded docket[.]"  *Id.*

21          The relative docket congestion favors transfer here.  As of June 2024, the Northern District

22   had 521 case filings per judge, with a median time from filing to trial in civil cases of 48.9 months.

23   *See* https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2024 (last

24   visited August 15, 2024).  By comparison, the Southern District had 441 filings per judge, with a

25   median time to trial of 33.1 months.  *Id.*  Because this District is more congested, Garland should not

26   burden this Court with a case with which it has no meaningful connection.  *See Romoff*, 2022 WL

27   3905301, at *6 (transferring case from Southern District of California to Eastern District of

28   Pennsylvania because, among other reasons, trial could be speedier due to less congested docket).

6.      No Factors Weigh Against Transfer.

While courts sometimes consider additional factors in assessing the propriety of transfer, none of those factors has any significance here.

First, both Districts are equally familiar with the California laws governing Garland's claims. Accordingly, this factor is neutral.  *See Bhatia v. Silvergate Bank*, 2023 WL 4937325, at *8 (N.D. Cal. Aug. 1, 2023) (transferring case from Northern District of California to Southern District of California where "[t]he familiarity of each forum with the applicable law is neutral because both forums are federal courts located in California equally familiar with California and federal law"); *see also Perez*, 2024 WL 2191940, at *1 (transferring case from the Northern District of California to the Central District of California in part because the Central District is equally familiar with California state law claims); *Davis v. N. Y. Life Ins. Co.*, 2024 WL 100277, at *4 (N.D. Cal. Jan. 9, 2024) (finding this factor neutral because the Northern District of California and the Eastern District of California are "equally familiar with California law").

Second, the ease of access to documentary evidence has little relevance given "the availability of modern photocopying and electronic document transmittal technology."  *Multimedia Patent Trust v. Tandberg, Inc.*, 2009 WL 3805302 at *5 (S.D. Cal. Nov. 12, 2009); *see also Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1091 (N.D. Cal. 2020) ("[I]n the age of electronically stored information, the ease of access to evidence is neutral [when] much of the evidence . . . will be electronic documents, which are relatively easy to obtain in any district.") (internal quotation and citation omitted); *Williams v. Granite Constr. Co.*, 2009 WL 250104, *4 (N.D. Cal. Feb. 3, 2009) ("the location of documentary evidence is entitled to little weight given the technology available today.").  Indeed, Duane Morris is not aware of any documentary evidence located in the Northern District.

Finally, the feasibility of consolidating this matter with other cases is irrelevant.  Garland has not identified, and Duane Morris is not aware of, any related actions.

7.      On Balance, The Factors Clearly Favor Transfer.

The most significant factors—namely, the convenience of the parties and witnesses and local interest in the controversy—clearly favor transfer to the Southern District of California, and *none* of

the relevant factors favors this District.  Further, transfer to Garland's home district—where she

lives, where her Duane Morris office is located, and where the witnesses are located—would not

prejudice her in any way.  Because this matter is in its nascent stages, transfer will not cause any

undue delay or inefficiencies.  *See Paaluhi*, 2006 WL 5671235, at *3 (holding the "interests of

justice" are best served by transfer to the district "provid[ing] the most convenient and efficient

forum" for the matter).  Therefore, the Court should transfer this action, rather than indulge

Garland's obvious attempt at forum-shopping.

## IV.      CONCLUSION

For the reasons set forth above, Duane Morris respectfully requests that the Court transfer

this action to the Southern District of California.


Dated: August 29, 2024                          PROSKAUER ROSE LLP


                                                By:    */s/ Gregory W. Knopp*
                                                       Gregory W. Knopp
                                                       Elise M. Bloom
                                                          (*pro hac vice* application pending)
                                                       Anthony J. Oncidi
                                                       Philippe A. Lebel
                                                       Attorneys for Defendant
                                                       Duane Morris LLP