**PROSKAUER ROSE LLP**
ANTHONY J. ONCIDI (SBN 118135)
GREGORY W. KNOPP (SBN 237615)
PHILIPPE A. LEBEL (SBN 274032)
JENNIFER J. MCDERMOTT (SBN 339796)
aoncidi@proskauer.com
gknopp@proskauer.com
plebel@proskauer.com
jmcdermott@proskauer.com
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:  310-557-2900
Facsimile:   310-557-2193

ELISE M. BLOOM (*admitted pro hac vice*)
ebloom@proskauer.com
Eleven Times Square
New York, NY 10036
Telephone: 212-969-3000
Facsimile: 212-969-2900

Attorneys for Defendant Duane Morris LLP

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| | |
|---|---|
| MEAGAN GARLAND, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DUANE MORRIS LLP, a business entity; TAX ACCOUNTING GROUP, a business entity; and DOES 1 through 200, inclusive,<br><br>Defendants. | Case No. 4:24-cv-04639-HSG<br><br>Judge Haywood S. Gilliam, Jr.<br><br>**DEFENDANT DUANE MORRIS LLP'S REPLY TO PLAINTIFF MEAGAN GARLAND'S OPPOSITION TO MOTION TO TRANSFER VENUE**<br><br>[Filed Concurrently with Declaration of Gregory W. Knopp]<br><br>Date:        October 3, 2024<br>Time:       2:00 p.m.<br>Ctrm:       2, 4th Floor<br><br>Date Action Filed: July 31, 2024 |

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. Garland Misstates Duane Morris's Burden Of Proof. .................................................. 2

    B. The Relevant Factors Favor Transfer. .......................................................................... 4

        1. The Convenience Of The Parties Favors Transfer. ............................................. 4

        2. The Local Interest In The Controversy Favors Transfer. ................................... 5

        3. The Convenience Of The Witnesses Favors Transfer. ...................................... 8

        4. The Relative Court Congestion Favors Transfer. ............................................. 11

III. CONCLUSION .................................................................................................................... 12

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Allchin v. Volume Servs., Inc.*,
   2016 WL 704616 (E.D. Cal. Feb. 23, 2016).................................................................10

*Ambriz v. Matheson Tri-Gas*,
   2014 WL 2753886 (N.D. Cal. June 9, 2014)..................................................................5

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*,
   2006 WL 2868971 (N.D. Cal. Oct. 6, 2006).................................................................10

*Arreola v. Finish Line*,
   2014 WL 6982571 (N.D. Cal. Dec. 9, 2014)...............................................................5, 6

*AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*,
   2006 WL 2850054 (N.D. Cal. Oct. 5, 2006)...................................................................3

*Bowen v. JEA Senior Living Health & Welfare Benefit Plan LLC*,
   2020 WL 7755681 (C.D. Cal. Nov. 19, 2020)..............................................................11

*Burrus v. Elevance Health, Inc.*,
   2022 WL 17722396 (N.D. Cal. Dec. 15, 2022).......................................................10, 11

*Cal. Writer's Club v. Sonders*,
   2011 WL 4595020 (N.D. Cal. Oct. 3, 2011).................................................................10

*Chodock v. Am. Econ. Ins. Co.*,
   2005 WL 2994451 (D. Ariz. 2005).................................................................................3

*Chrysler Cap. Corp. v. Woehling*,
   663 F. Supp. 478 (D. Del. 1987).....................................................................................3

*Clackamas Gastroenterology Assocs., P.C. v. Wells*,
   538 U.S. 440 (2003)........................................................................................................6

*Clark v. Spring Spectrum L.P.*,
   2010 WL 5173872 (N.D. Cal. Dec. 15, 2010)................................................................9

*Devaux-Spitzley v. Prudential Insurance Company of America*,
   2019 WL 935137 (N.D. Cal. Feb. 26, 2019) ..................................................................5

*E. & J. Gallo Winery v. F. & P.S.p.A.*,
   899 F. Supp. 465 (E.D. Cal. 1994)..................................................................................9

*Easton v. Wells Fargo & Co.*,
   2020 WL 3639934 (N.D. Cal. July 6, 2020).........................................................2, 4, 7

ii                                                                                    4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

*Expert Microsystems, Inc. v. SmartSignal Corp.*,
  2006 WL 2926729 (E.D. Cal. Oct. 11, 2006) ................................................................. 8

*Ferrick v. Spotify USA Inc.*,
  2016 WL 11623778 (C.D. Cal. Oct. 26, 2016) ............................................................... 3

*Firemen's Fund Ins. Co. v. Nat'l Bank for Coops.*,
  1993 WL 341274 (N.D. Cal. Aug. 27, 1993) .................................................................. 9

*Foster v. Nationwide Mut. Ins. Co.*,
  2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ................................................................ 3

*Glaxo Grp. Ltd. v. Genentech, Inc.*,
  2010 WL 1445666 (N.D. Cal. Apr. 12, 2010) ............................................................. 3, 4

*Hartfield v. Offshore Oil Servs., Inc.*,
  2006 WL 2670984 (S.D. Tex. Sept. 14, 2006) .............................................................. 10

*Levine v. Entrust Grp., Inc.*,
  2012 WL 6087399 (N.D. Cal. Dec. 6, 2012) ................................................................ 11

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ......................................................................................... 2

*Martinez v. Knight Transportation Inc.*,
  2017 WL 2722015 (E.D. Cal. June 23, 2017) ................................................................ 3

*Mays v. Wal-Mart Stores, Inc.*,
  2018 WL 1400468 (N.D. Cal. Mar. 19, 2018) ................................................................ 4

*McCormack v. Safeway Stores, Inc.*,
  2012 WL 5948965 (N.D. Cal. Nov. 28, 2012) .............................................................. 10

*Miracle v. NYP Holdings, Inc.*,
  87 F. Supp. 2d 1060 (D. Haw. 2000) ......................................................................... 4, 5

*Mirza v. Cent. Asia Inst.*,
  2014 WL 12663437 (C.D. Cal. May 27, 2014) .............................................................. 3

*Nanografix Corp. v. Pollard Banknote Ltd.*,
  2019 WL 2240439 (C.D. Cal. Feb. 28, 2019) .............................................................. 10

*Packlane, Inc. v. Best & Flanagan, LLP*,
  2023 WL 8458263 (N.D. Cal. Nov. 20, 2023) ................................................................ 9

*Park v. Dole Fresh Vegetables, Inc.*,
  964 F. Supp. 2d 1088 (N.D. Cal. 2013) ......................................................................... 4

*Perez v. Performance Food Grp., Inc.*,
  2017 WL 66874 (N.D. Cal. Jan. 6, 2017) ............................................................ 5, 6, 10

iii                                                4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

*Qurio Holdings, Inc. v. Dish Network Corporation*,
    2015 WL 4148962 (N.D. Cal. July 9, 2015)...............................................................................6

*RLI Ins. Co. et al. v. Ceradyne, Inc. et al.*,
    2020 WL 12948060 (C.D. Cal. Dec. 28, 2020) .......................................................................10

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
    342 F.R.D. 274 (N.D. Cal. Aug. 2, 2022).................................................................................7

*Ruiz v. Affinity Logistics Corp.*,
    2005 WL 5490240 (N.D. Cal. Nov. 7, 2005) ...........................................................................4

*Senne v. Kansas City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ......................................................................................3

*Silkiss v. Lee*,
    2018 WL 11471621 (N.D. Cal. Nov. 19, 2018) .......................................................................6

*Stewart v. Jos. A. Bank Clothiers, Inc.*,
    2010 WL 545846 (N.D. Cal. Feb. 11, 2010) ............................................................................8

*Strother v. S. Cal. Permanente Med. Grp.*,
    79 F.3d 859 (9th Cir. 1996) ......................................................................................................6

*Walters v. Famous Transps., Inc.*,
    488 F. Supp. 3d 930 (N.D. Cal. Sept. 23, 2020).....................................................................11

*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) ....................................................................................3

*Wilson v. Walgreen Co.*,
    2011 WL 4345079 (N.D. Cal. Sept. 14, 2011) .......................................................................11

**STATE CASES**

*Allen v. Staples, Inc.*,
    84 Cal. App. 5th 188 (2022) .....................................................................................................7

**STATUTES**

Cal. Lab. Code § 1197.5 ..................................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 30(a)(2)...............................................................................................................9

Local Rule 7-3(a) .............................................................................................................................8

iv                                                                                        4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In opposing Duane Morris LLP's ("Duane Morris" or the "Firm") motion to transfer venue, Meagan Garland never offers any explanation for why, as a San Diego resident who asserts claims based on her alleged San Diego-based employment, she filed suit in this Court. Her silence on this obvious question confirms her forum-shopping, which alone supports transfer to a clearly more appropriate forum—the one in which she and her attorneys live and work.

Forum-shopping aside, Duane Morris easily carried its burden of demonstrating the Southern District of California is both a suitable and preferable forum for this dispute. Garland concedes she could have filed this action there, so the Court must apply the relevant factors. Unable to seriously contend that *any* of the factors favors this District, Garland tries to tip the scales in her favor by over-stating Duane Morris's burden. However, the case law is clear: the burden is relaxed—and the plaintiff's choice of forum deserves no deference—where, as here, the plaintiff resides outside the chosen venue, the plaintiff asserts class claims, and the claims arose elsewhere.

Duane Morris easily satisfied this lesser burden—indeed, any burden—by showing all the factors that favor either district clearly support transfer. For example, the convenience of the parties—especially Garland herself—obviously favors transfer to a forum in which Garland lives and works. The Southern District's clear "local interest" in a dispute concerning Garland's alleged employment in San Diego likewise favors transfer. The relative court congestion in the respective districts favors transfer as well, as a speedier trial is likely available in San Diego.

Finally, and most significantly, transfer would serve the convenience of the witnesses, who primarily are Duane Morris partners and employees in San Diego who can attest to Garland's performance issues, which explain her compensation, and her functioning as a genuine partner. Duane Morris identified these witnesses by their office and title and described their relevant knowledge, which is plainly sufficient. Garland ignores the nature of her claims in insisting the likely witnesses are myriad Firm partners from around the country just because they serve on committees or hold high-ranking positions. At bottom, her claims concern her day-to-day work in San Diego, not just a "decision" or "policy." It is hardly surprising that the witnesses most familiar

1                                                                                         4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

with Garland's performance and functioning as a partner are concentrated in San Diego, where Garland works.[1]

For all these reasons, the Southern District of California clearly is a more appropriate forum. Accordingly, to serve the interests of justice and promote convenience for the parties and witnesses alike, the Court should grant this motion and transfer this action to Garland's home district.

## II.   ARGUMENT

### A.   Garland Misstates Duane Morris's Burden Of Proof.

Garland stresses Duane Morris's purportedly "heavy" burden to prove the Southern District is a more convenient forum because, she claims, her choice of this District is entitled to deference. However, as this Court explained, the "[p]laintiff's chosen venue is entitled to little—*if any*—weight in this putative class action" filed in a district where the plaintiff did not reside and the claims did not arise. *Easton v. Wells Fargo & Co.*, 2020 WL 3639934, at *3 (N.D. Cal. July 6, 2020) (Gilliam, H.) (emphasis added). Ninth Circuit law confirms the ordinary deference does not apply when a plaintiff who is not a resident of the venue files a class action based on events that did not occur there. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.").

Garland's choice of venue is due no deference under these principles. Garland neither resides in this District nor works for Duane Morris here. Rather, she is a San Diego resident who works for Duane Morris in San Diego. Further, she filed this case as a putative class action based on events that plainly did not occur in this District. Her claims arise from her alleged employment relationship, which unquestionably is based in San Diego. Indeed, Garland cites no support for her outlandish assertion that her claims "arose" in Northern California just because a few San Francisco partners happen to serve on various Firm committees. Opp. at 8. Because this action has no meaningful connection to this District, Garland's choice of forum deserves no deference.

---

[1] Remarkably, Garland complains that Duane Morris's discussion of her performance constitutes a "smear campaign" (Opp. at 4), when her lawsuit obviously puts her performance squarely at issue. The Firm has a right to defend itself by addressing her performance. Garland also contends mentioning her prolonged leave of absence, which illustrates the Firm's fair treatment of her, somehow constituted an improper disclosure. It did not.

1    Further, "[a]s deference accorded to a [p]laintiff's choice of forum decreases, defendant's burden to upset the plaintiff's choice of forum also decreases." *Glaxo Grp. Ltd. v. Genentech, Inc.*, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010); *see also AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*, 2006 WL 2850054, at *3 (N.D. Cal. Oct. 5, 2006) (same); *Ferrick v. Spotify USA Inc.*, 2016 WL 11623778, at *4 (C.D. Cal. Oct. 26, 2016) (same); *Mirza v. Cent. Asia Inst.*, 2014 WL 12663437, at *12 (C.D. Cal. May 27, 2014) (same). Thus, "when the plaintiff chooses a forum which has no connection to [the plaintiff] himself or the subject matter of the suit . . . the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer." *Chodock v. Am. Econ. Ins. Co.*, 2005 WL 2994451, at *3 (D. Ariz. 2005) (quoting *Chrysler Cap. Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987)).

Garland fails to address Duane Morris's authority and relies on distinguishable cases that do not question these accepted propositions. In *Martinez v. Knight Transportation Inc.*, 2017 WL 2722015 (E.D. Cal. June 23, 2017), for example, the plaintiff's choice of forum "slightly" weighed against transfer from California to Arizona because the plaintiff alleged claims under California law based on conduct that occurred *within the chosen forum*. *Id.*, at *4. Further, another overlapping class action was pending in California that could "impact the instant action." *Id.*, at *5. No similar facts exist here. Nor does *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981 (N.D. Cal. 2015), suggest Garland's choice deserves deference. The *Senne* court afforded plaintiff's choice some deference in part because, unlike here, the plaintiff asserted claims under the Fair Labor Standards Act ("FLSA"), and "plaintiffs' choice of forum in an FLSA action is entitled to greater deference than in the case of Rule 23 class actions." *Id.* at 1059 n.16.

In summary, Garland chose a forum that is foreign to her and the events giving rise to her claims. She never even attempts to justify her choice of this District, confirming it is the product of blatant forum-shopping. Her choice of forum is entitled to no deference in these circumstances. *See Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007) ("Where forum-shopping is evident . . . courts should disregard plaintiff's choice of forum."); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107 (N.D. Cal. 2001) ("The policy behind not deferring to a nonresident plaintiff's choice of venue appears tied into the notion that plaintiffs should be

3                                    4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

discouraged from forum shopping."). Therefore, Duane Morris's "burden to upset the plaintiff's choice of forum also decreases." *Glaxo*, 2010 WL 1445666, at *4.

### B. The Relevant Factors Favor Transfer.

Garland concedes that two factors—the ease of access to documentary evidence and familiarity with the laws governing her claims (Opp. at 13-14)—are neutral. Further, she does not plausibly contend that *any* relevant factor favors venue in this District. In fact, all the factors that tip one way or the other plainly favor transfer to the Southern District.

#### 1. The Convenience Of The Parties Favors Transfer.

When considering the convenience of the parties, courts start with the plaintiff's residence. *See* Mot. at 9-10; *Easton*, 2020 WL 3639934, at *3 (Gilliam, H.) (granting transfer and explaining, "[i]ndeed, because Plaintiff resides in the Central District . . . a transfer there would logically be more convenient. And litigating in the Central District would be at least equally convenient for the Defendants, which do business in both Districts."); *Ruiz v. Affinity Logistics Corp.*, 2005 WL 5490240, at *2 (N.D. Cal. Nov. 7, 2005) ("the initial analysis of proper venue, even for a purported class action, is the location of the residence, employment and evidence of the named plaintiff").

Here, Garland is a San Diego resident who has retained San Diego-based counsel to represent her in this lawsuit. Accordingly, she may not avoid transfer to a forum that is more convenient for *her* simply because Duane Morris "is a large, global law firm." Opp. at 12. *See Mays v. Wal-Mart Stores, Inc.*, 2018 WL 1400468, at *4 (N.D. Cal. Mar. 19, 2018) (transferring case from Northern District of California where the plaintiff and both parties' attorneys' lived and/or worked in the Central District: "[t]ravel costs would certainly be lower and scheduling court appearances would be easier if the case were litigated where Plaintiff and all counsel live"); *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (convenience of the parties favored transfer where the plaintiff and counsel lived in the transferee district).

Garland's reliance on *Miracle v. NYP Holdings, Inc.*, 87 F. Supp. 2d 1060 (D. Haw. 2000), is obviously misplaced. Garland argues that "where plaintiff is a private person and defendant is a large corporation, defendant's assertions regarding monetary expense and difficulty in litigating in a distant forum are likely to be disregarded" because "[c]orporations are better-equipped than

4                                             4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

individuals to absorb increased litigation costs." *Id.* at 1073. However, the court's concern in *Miracle* was that the corporate defendant sought transfer from the forum *where the plaintiff resided* (Hawaii) to one nearly 5,000 miles away where only the defendant resided (New York). By contrast, Duane Morris seeks transfer *to* the forum where Garland resides (*i.e.*, at least 500 miles *closer* to where she resides).

*Devaux-Spitzley v. Prudential Insurance Company of America*, 2019 WL 935137 (N.D. Cal. Feb. 26, 2019), also is of no help to Garland. There, the court *granted* the motion to transfer from the Northern District of California to the Southern District of Ohio. The court stressed that it "must be careful to avoid a transfer that 'would merely shift rather than eliminate' the inconvenience of costs[.]" *Id.*, at *4. Here, again, Duane Morris seeks to "eliminate"—not "shift"—"the inconvenience of costs" by seeking transfer to San Diego, where both parties, Garland's counsel, and many key witnesses reside. *See Ambriz v. Matheson Tri-Gas*, 2014 WL 2753886, at *3 (N.D. Cal. June 9, 2014) (finding litigating in the Central District would be more cost effective for both parties where, as here, the plaintiffs and their counsel resided and worked there).

In sum, the convenience of the parties plainly favors transfer. Garland cannot seriously disagree. Indeed, she cites no facts or authority suggesting otherwise.

### 2. The Local Interest In The Controversy Favors Transfer.

Garland misunderstands this factor in arguing neither forum has a particular interest in this matter because she filed it as a nationwide putative class action. At present, the only claims before the Court are Garland's individual claims. It is entirely speculative to assume this case will ever proceed as a certified class action. Therefore, the relevant question is which district "has a greater interest in [Garland's] individual claim." *Arreola v. Finish Line*, 2014 WL 6982571, at *11 (N.D. Cal. Dec. 9, 2014) (this factor favored transfer even though "the Northern and Central Districts would have an equal interest in a certified class's case" because "the Central District has a greater interest in [Plaintiff's] individual claim"); *see also Perez v. Performance Food Grp., Inc.*, 2017 WL 66874, at *4 (N.D. Cal. Jan. 6, 2017) ("[T]he Court finds that this factor favors transfer because the Central District would have a modestly stronger interest in the class action, if certified, and more importantly, the Central District clearly has a stronger interest in Plaintiff's individual claims.").

The Southern District plainly has a stronger interest in Garland's individual claims. Indeed, district courts in the Ninth Circuit consistently find—as logic dictates—that the district in which the plaintiff worked has a stronger local interest in a case alleging employment law claims. *See id.*, at *4 (this factor favored transfer to the Central District because "[p]laintiff was employed exclusively in the Central District, such that the alleged employment law violations must have occurred there"); *Areola*, 2014 WL 6982571, at *11 ("Because [plaintiff] was employed exclusively in the Central District, that district has the greatest local interest in deciding this controversy."). Garland reliance on *Qurio Holdings, Inc. v. Dish Network Corporation*, 2015 WL 4148962 (N.D. Cal. July 9, 2015) (Gilliam, H.), confirms this point. *Id.*, at *6 ("[C]ourts in this district have indicated that forums where the operative facts occurred also have an interest in deciding a case.").

In arguing to the contrary, Garland mistakenly contends the "operative facts occurred across the country" because "Duane Morris's Executive Committee and Partners Board make all of the Firm's major compensation decisions and policies." Opp. at 14. This characterization of the lawsuit as merely challenging "decisions and policies" made outside California cannot withstand scrutiny. As Garland herself described the lawsuit, it includes three parts: "[1] employment misclassification of [Duane Morris's] non-equity partners; [2] failure to reimburse reasonable expenses; as well as [3] . . . pay equity discrimination against diverse and female attorneys." *Id.* at 1. Each of these components depends in large part on Garland's day-to-day work experiences in San Diego.

First, the misclassification theory "requires a factual inquiry which goes beyond merely the partnership agreement and the 'partner' label." *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859 (9th Cir. 1996). Relevant factors include the individual's duties and responsibilities, the degree of supervision, their reporting relationships, and their ability to influence the organization. *See Silkiss v. Lee*, 2018 WL 11471621, at *4 (N.D. Cal. Nov. 19, 2018) ("[I]n a variety of contexts, the determination of employee status is a fact-specific inquiry. Accordingly, the label of 'partner' does not necessarily foreclose employee status. Rather, a 'partner's' employee status will depend upon the nature and size of the partnership, the partner's duties with respect to the partnership, and the power the partnership or organization has over the particular individual."); *see also Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 449-50 (2003) (test to determine if

shareholder-director is "employee" under federal antidiscrimination laws considers, *inter alia*, whether and, if so, to what extent organization supervises individual's work; whether individual reports to someone higher in organization; whether and, if so, to what extent individual is able to influence organization). To a large degree, these factors will depend on Garland's day-to-day work in San Diego, including how she interacted with other partners and the Firm generally.

Second, claims for unreimbursed business expenses likewise depend on Garland's day-to-day experiences working in San Diego. Such claims turn on whether Garland incurred an expense in performing her work, whether the expense was "necessary," and whether Duane Morris had reason to know about unreimbursed amounts. *See Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 311 (N.D. Cal. Aug. 2, 2022) ("[T]he elements of a [Labor Code] Section 2802 claim are: '(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary.'") (citation omitted).

Third, Garland's pay discrimination claim demands an evaluation of her job performance. "To prove a prima facie case of wage discrimination, 'a plaintiff must establish that, based on gender, the employer pays different wages to employees doing substantially similar work under substantially similar conditions.'" *Allen v. Staples, Inc.*, 84 Cal. App. 5th 188, 194 (2022) (citations omitted); *see also* Cal. Lab. Code § 1197.5. Therefore, this part of the lawsuit likewise features the "work" Garland performed and the "conditions" under which she performed it. To name just one example, Garland's conduct in discovery that resulted in sanctions motions against the Firm and its client (*see* Mot. at 4), a significant issue bearing on her performance and compensation, can be illuminated only by San Diego-area witnesses.

Because Garland's claims largely depend on her day-to-day experiences in San Diego, the Southern District clearly has a strong local interest in this action, as this Court has found in like circumstances. *See Easton*, 2020 WL 3639934, at *5 (Gilliam, H.) (granting motion to transfer and noting that "the district where the named plaintiff worked has the greatest local interest"). The Northern District, by contrast, has no such interest. Accordingly, this factor favors transfer as well.

///

7   4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

### 3. The Convenience Of The Witnesses Favors Transfer.

As explained, this case primarily concerns Garland's day-to-day work experiences in San Diego: the quality of her performance, her autonomy, the alleged supervision, her interaction with her partners and the Firm generally, and her business expenses. Naturally, many of the witnesses who can provide information relevant to these issues are the Firm's partners and other attorneys and staff who worked with or for Garland. Duane Morris identified many such witnesses by describing them and the information they possess. *See* Mot. at 4-5. Because San Diego is more convenient for these significant witnesses, this factor strongly favors transfer. Garland offers a variety of arguments to explain away this showing, each of which lacks merit.

First, Garland argues Duane Morris's showing is inadequate. Remarkably, she contends Duane Morris failed to disclose the witnesses' locations, any context for their anticipated testimony, and why this forum would be inconvenient. *See* Opp. at 9-10. This contention is patently false. Duane Morris identified the location of each witness, described their position within the Firm, provided a summary of their anticipated testimony, explained that such testimony would address Garland's partner status and the issues justifying her compensation (*i.e.*, the crux of the lawsuit), and articulated the obvious point that "[t]estifying in a trial in San Diego would be far more convenient for those witnesses[.]" *See* Mot. at 4-5, 10.[2]

Garland also complains that Duane Morris did not identify the potential witnesses by name, even though the detailed descriptions should make their identities plain to her. To remove any conceivable doubt, the Firm has confirmed their identities in a letter to Garland's counsel.[3] *See*

---

[2] The Court should disregard Garland's separate objections to the declaration of Edward Cramp (Dkt. No. 22-21) because they violate the Court's rules. *See* Local Rule 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum."). The objections are misplaced in any event, as courts deciding transfer motions routinely credit declarations identifying potential witnesses and their anticipated testimony. *See Stewart v. Jos. A. Bank Clothiers, Inc.*, 2010 WL 545846, at *4 (N.D. Cal. Feb. 11, 2010) (crediting declaration by bank manager identifying potential witnesses and explaining they have personal knowledge regarding plaintiff's allegations); *Expert Microsystems, Inc. v. SmartSignal Corp.*, 2006 WL 2926729, at *2 (E.D. Cal. Oct. 11, 2006) (crediting declaration by counsel identifying key witnesses and their location and providing brief summary of their expected testimony).

[3] In an abundance of caution, Duane Morris did not identify the witnesses by name in public filings given the potential media attention to this matter and the sensitive nature of some of the allegations. However, as explained above, the descriptions of the witnesses should suffice.

Declaration of Gregory W. Knopp ¶ 2 and Ex. A. However, this disclosure was not necessary because a party moving to transfer must only "identify"—not necessarily "name"—key witnesses and provide "a generalized statement of their anticipated testimony," which Duane Morris did. *E. & J. Gallo Winery v. F. & P.S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994). Cases Garland cites confirm this point. *See Firemen's Fund Ins. Co. v. Nat'l Bank for Coops.*, 1993 WL 341274, at *4 (N.D. Cal. Aug. 27, 1993) (party moving to transfer venue is merely "obligated to clearly *specify* the key witnesses to be called and make at least a generalized statement of what their testimony would have included") (emphasis added). Further, *Packlane, Inc. v. Best & Flanagan, LLP*, 2023 WL 8458263 (N.D. Cal. Nov. 20, 2023), is easily distinguished, as the defendants provided *no* information about the potential witnesses, including any identifying information, where they resided, the context for their testimony, and whether they still worked for the defendant. *Id.*, at *3. Here, by contrast, the Court has ample information to find significant witnesses reside in the transferee forum.

Second, Garland again misleadingly suggests this case has virtually nothing to do with her work for the Firm in San Diego and, instead, exclusively concerns "policies" and "decisions" made elsewhere. This framing ignores the nature of her claims. As explained, each component of the lawsuit centers on Garland's day-to-day work experiences in San Diego. This conclusion remains true even if members of the Firm's leadership reside elsewhere. Indeed, Garland's suggestion that dozens of Firm partners and executives from around the country are possible witnesses defies reality. Garland does not even attempt to explain why, for example, *numerous* members of the Firm's Executive Committee and Partner Board would need to testify about an express Firm policy.[4] *See* Opp. at 10. She also names a slew of executives—the CFO, the COO, the director of recruiting, the Director of Human Resources—and blithely states they know about the Firm's "compensation schemes." Opp. at 10-11. Such superficial statements fall well short of identifying "key witnesses" and providing a "generalized statement of their anticipated testimony." *E. & J. Gallo Winder*, 899 F. Supp. at 466. Garland thus has done little to assist the Court in identifying the witnesses most "important" to her case. *See Clark v. Spring Spectrum L.P.*, 2010 WL 5173872, at *3 (N.D. Cal. Dec. 15, 2010) ("In determining whether this factor weighs in favor of transfer, the court must

---

[4] Indeed, Garland is presumptively limited to ten depositions. Fed. R. Civ. Proc. 30(a)(2).

9   4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the witnesses.") (citation omitted); *McCormack v. Safeway Stores, Inc.*, 2012 WL 5948965, at *3 (N.D. Cal. Nov. 28, 2012) (same); *RLI Ins. Co. et al. v. Ceradyne, Inc. et al.*, 2020 WL 12948060, at *5 (C.D. Cal. Dec. 28, 2020) (similar).

Third, Garland contends party affiliated witnesses deserve less consideration. However, in employment disputes, like this one, courts routinely prefer the district in which the plaintiff worked because it is generally more convenient for *all* the witnesses, party and non-party alike. *E.g.*, *Nanografix Corp. v. Pollard Banknote Ltd.*, 2019 WL 2240439, at *6 (C.D. Cal. Feb. 28, 2019) (granting motion to transfer where key witnesses included the defendant's employees located in or near the Eastern District of Michigan); *Perez*, 2017 WL 66874, at *4 (transferring putative class action to Central District "because Plaintiff worked entirely in the Central District, any non-party witnesses—such as his former co-workers or managers—are most likely to reside in the Central District, and therefore, most likely would find it more convenient to testify there"); *Allchin v. Volume Servs., Inc.*, 2016 WL 704616, at *12 (E.D. Cal. Feb. 23, 2016) (transferring case to the Southern District of California in part because "during the entire time Plaintiffs worked for [defendant], they worked at [defendant's] locations in San Diego," so "coworkers or supervisors would be located there").

By contrast, in the cases Garland cites, the chosen venue had a clear connection to the dispute. *See Cal. Writer's Club v. Sonders*, 2011 WL 4595020, at *13 (N.D. Cal. Oct. 3, 2011) (denying transfer where claims had significant connection to Northern District, where plaintiff lived); *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 2006 WL 2868971, at *4 (N.D. Cal. Oct. 6, 2006) (denying transfer where plaintiff lived in Northern District, which had significant connection to events supporting both complaint and counterclaims); *Hartfield v. Offshore Oil Servs., Inc.*, 2006 WL 2670984, *6 (S.D. Tex. Sept. 14, 2006) (denying motion to transfer from Southern District of Texas to Western District where alleged wrong occurred off Texas coast).

Finally, Garland contends more putative class members work in Northern California than Southern California. As Duane Morris explained without rebuttal, many courts decline to consider the putative class members' location at all. *See* Mot. at 11; *e.g., Burrus v. Elevance Health, Inc.*,

10                                    4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue

2022 WL 17722396, at *4 (N.D. Cal. Dec. 15, 2022) ("[I]t is well established that determination of proper venue is based on the named plaintiff, not unnamed or absent putative class members."); *Levine v. Entrust Grp., Inc.*, 2012 WL 6087399, at *4 (N.D. Cal. Dec. 6, 2012) ("determining which potential venue is appropriate should be based on the plaintiffs in the class action—not absent class members"). In any event, as Duane Morris demonstrated (again without rebuttal), the putative class members are not concentrated in this District and, in fact, mostly reside outside California, so this District is no more convenient for them than the Southern District. *See* Mot. at 12. Accordingly, the location of the putative class members does not weigh against transfer. *See Wilson v. Walgreen Co.*, 2011 WL 4345079, at *4 (N.D. Cal. Sept. 14, 2011) ("[f]or persons working in Illinois, there is essentially no difference between the Northern District and the Central District").

In summary, once Garland's distractions are appropriately swept aside, the conclusion is clear: this lawsuit primarily concerns Garland's day-to-day work as a partner in Duane Morris's San Diego office. Accordingly, many of the significant witnesses will be the Firm's partners and employees who are familiar with Garland's work performance and execution of her partner responsibilities. Duane Morris showed many of these individuals are based in San Diego or elsewhere in Southern California. Naturally, therefore, a San Deigo venue is more convenient for them. *See Bowen v. JEA Senior Living Health & Welfare Benefit Plan LLC*, 2020 WL 7755681, at *3 (C.D. Cal. Nov. 19, 2020) (finding convenience of witnesses favors transfer where likely witnesses, who supervised plaintiff, work and reside in the transferee district).[5]

### 4. The Relative Court Congestion Favors Transfer.

While this factor may deserve less weight than others, courts in this district continue to consider it in deciding transfer motions. *E.g., Walters v. Famous Transps., Inc.*, 488 F. Supp. 3d 930, 941 (N.D. Cal. Sept. 23, 2020) (granting transfer to Ohio and considering relative court congestion based on the Federal Court Management Statistics showing pending actions per judgeship, median time for disposition of civil cases, and median time to trial). This factor deserves consideration where there is more than a one-year difference in time to trial between the Southern

---

[5] Garland speculates that some of the Firm's witnesses might travel to San Francisco for work occasionally. Opp. at 12. However, she does not cite any law to support the argument that a venue is more convenient just because a witness might sometimes travel there.

and Northern Districts (*see* Mot. at 12)—especially when the plaintiff filed her case in a more congested district where she does not reside and the events giving rise to the lawsuit did not occur.

### III. CONCLUSION

All the relevant factors that favor either forum clearly support transfer to the Southern District of California, Garland's home district. Therefore, Duane Morris respectfully requests that the Court transfer this action, rather than indulge Garland's forum-shopping.

Dated: September 19, 2024                    PROSKAUER ROSE LLP

By:   */s/ Gregory W. Knopp*
    Gregory W. Knopp
    Elise M. Bloom (*admitted pro hac vice*)
    Anthony J. Oncidi
    Philippe A. Lebel
    Jennifer J. McDermott
    Attorneys for Defendant Duane Morris LLP

12                                    4:24-cv-04639-HSG
Defendant Duane Morris LLP's Reply to Plaintiff Meagan Garland's Opposition
to Motion to Transfer Venue